**SIGNED THIS: August 22, 2016**

_____

**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 14-72106 |
| Richard M. Sabbun, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

## O P I N I O N

The Debtor's First Amended Chapter 11 Plan is before the Court for confirmation. Because the Debtor failed to obtain the affirmative vote of a single impaired class of creditors, and thus failed to establish a threshold requirement for confirmation, confirmation must be denied.

### I. Factual and Procedural Background

Richard M. Sabbun ("Debtor") filed his voluntary petition under Chapter 11

on December 2, 2014. The Debtor is an emergency room physician in Bloomington, Illinois; during each of the two years before filing, he earned approximately $600,000. In his initial filings, the Debtor scheduled an auto loan of about $21,000, a home mortgage of approximately $225,000, and a secured tax debt in an unknown amount owed to the Internal Revenue Service ("IRS"). The Debtor also scheduled a $52,000 priority tax debt to the Illinois Department of Revenue ("IDOR") and over $1,100,000 in priority tax debt to the IRS. The indebtedness to the IRS was scheduled as having been incurred from 1998 through 2010. Finally, the Debtor scheduled a $75 nonpriority unsecured debt owed to A/R Concepts, and unsecured debts in unknown amounts owed to Glenview State Bank, Heartland Emergency Specialists, LLC ("Heartland"), and Vascik's Bookkeeping & Tax Service ("Vascik's Bookkeeping").

Shortly after the case was filed, the Debtor and the IRS filed a joint motion to prohibit the Debtor's use of funds in a retirement account on which the IRS claimed a perfected tax lien. Thereafter, the IRS filed a proof of claim that asserted a secured claim of over $1.6 million. The IDOR also filed a proof of claim, which listed a secured debt of nearly $50,000 and a nonpriority unsecured debt of $30.39.

After six months passed with little occurring in the case, a status hearing was held on July 28, 2015. The Debtor's attorney reported that the Debtor disagreed with the IRS's claim but admitted that no action to formally resolve the disagreement had been commenced. The Debtor was instructed to file an objection to the claim or an adversary proceeding forthwith to move the case along. An

-2-

objection to the IRS's proof of claim was subsequently filed, asserting that the IRS had voluntarily released some of its tax liens and that the secured portion of its claim should be reduced to just over $587,000. In apparent response, the IRS amended its claim, reducing the secured portion of its claim to $130,230.95 and increasing the unsecured portion to compensate. The IRS has since amended its proof of claim three additional times. The most recent amendment, filed in March 2016, claims a total debt of $1,601,545.01 with $130,230.95 secured and $1,471,315.06 unsecured. The IRS does not assert that any portion of its unsecured claim is entitled to priority status.

The Debtor filed a Chapter 11 plan and disclosure statement, and a motion for conditional approval of the disclosure statement on November 18, 2015. The disclosure statement was conditionally approved and an order was entered setting deadlines for objections and ballots to be filed. The United States Trustee ("UST") filed an objection to both confirmation of the plan and approval of the disclosure statement, arguing that the Debtor had mischaracterized the holders of his home mortgage and auto loans as impaired even though their pre-petition rights were undisturbed by the plan terms.

Prior to the confirmation hearing, the Debtor filed a ballot report showing that no ballots had been cast by any creditor either for or against the plan. The Debtor acknowledged through his attorney that because he had not obtained approval of at least one class of impaired creditors, his plan could not be confirmed. The Debtor requested, however, that he be allowed to filed an amended plan and amended disclosure statement which he asserted might garner favorable

votes from creditors. Before granting that leave, the Court discussed with the Debtor's attorney numerous problems with the plan and disclosure statement requiring serious improvement in any amended documents. Although the plan proposed to pay unsecured creditors 30% of their allowed claims, it did not actually commit the Debtor to pay a definite amount of money at any particular time. The budget contained in the disclosure statement reflected unusually large expenses and showed that, after payment of such expenses, the Debtor did not actually have sufficient disposable income to pay the amounts that he was promising to pay. Moreover, the plan and disclosure statement contained conflicting budget and payment projections, and did not include provisions for the payment of administrative expenses and UST fees. Confirmation of the plan and final approval of the disclosure statement were denied. The Debtor was given fourteen days to file amended documents.

The Debtor subsequently filed his First Amended Chapter 11 Plan ("Amended Plan") and First Amended Disclosure Statement ("Amended Disclosure Statement"). The Amended Plan proposes to pay the secured home mortgage and auto loan claims in full pursuant to their original contractual terms and designates those claimants as unimpaired. The secured portions of the IRS and IDOR claims are to be paid in full with 3% interest in twenty quarterly payments of $7020 and $2697 each. This secured class of claims is designated as impaired. The Amended Plan proposes to pay a 30% dividend to general unsecured creditors without interest in twenty quarterly payments of $22,103.20 each. The unsecured class is designated to include the IRS's unsecured claim, the $75 debt to A/R

Concepts, and debts in unknown amounts owed to Glenview State Bank, Heartland, and Vascik's Bookkeeping. Neither the Amended Plan nor the Amended Disclosure Statement refer to the unsecured portion of the IDOR claim. The budget included with the Amended Disclosure Statement shows that the Debtor lacks sufficient disposable income to make the payments proposed in the Amended Plan. Specifically, the Amended Disclosure Statement identifies that only about $91,000 per year will be available to make the over $127,000 per year in proposed plan payments.

At a hearing on approval of the Amended Disclosure Statement, the discrepancies and feasability issues raised by the Amended Disclosure Statement were discussed even though no objections to approval had been filed. The Court also expressed concern about the apparent lack of effort being put into this case by the Debtor's attorney and the lengthy delays that had occurred in proposing a feasible plan. The Debtor's attorney requested time to revise the budget attached to the Amended Disclosure Statement and the hearing was continued to allow the revisions to be made. At a continued hearing, the UST raised concerns about a discrepancy between the Debtor's actual income and the income reflected in the newly revised budget. The Debtor again requested and was given the opportunity to revise his budget. Finally, after the submission of a further revised budget, an order approving the Amended Disclosure Statement was entered on May 12, 2016. The order also set deadlines for balloting and objecting to the Amended Plan, and scheduled a confirmation hearing.

The IRS timely filed an objection to confirmation of the Amended Plan. In

the objection, the IRS argued that the Debtor had understated his income and claimed excessive expenses, thereby reducing the amount of funds available for distribution to unsecured creditors. No other party in interest objected to confirmation.

Prior to the confirmation hearing, the Debtor filed a ballot report which stated that two holders of claims had voted to accept the Amended Plan. A ballot signed by Sherry Vascik indicated that she held a general unsecured claim for $1000 and accepted the plan. The other ballot, signed by the Debtor on behalf of Heartland, referred to a claim in the amount of $10,000 and also accepted the plan. The Debtor later filed an amended ballot report reflecting only the acceptance of the Amended Plan by Heartland and acknowledging that any claim held by Sherry Vascik was for post-petition services.

At the confirmation hearing on June 28, 2016, the Debtor's attorney commenced his presentation by acknowledging that the ballot filed by the Debtor on behalf of Heartland could not be counted as it was for an insider claim. Thus, the Debtor admitted that no legitimate ballots accepting or rejecting the Amended Plan had been cast. The Debtor reported, however, that the IRS had agreed to withdraw its objection to confirmation provided the Debtor reduced his living expenses, increased payments to unsecured creditors from 30% to 44%, and turned over his tax refunds to the IRS. Notwithstanding the absence of ballots filed, the Debtor requested confirmation of the Amended Plan on the theory that the IRS's agreement could be treated as an "informal ballot." When the Court stated that it was not familiar with the concept of an "informal ballot" but was

willing to consider an extension of the deadline for balloting, the Debtor's attorney stated that he understood the IRS's position was that it would not file a ballot. Rather, the agreement with the IRS was only that it would withdraw its objection to confirmation and specifically agree by stipulation to accept the Amended Plan as modified. The attorney for the IRS confirmed that she had authority to enter into an agreed order or stipulation regarding the terms outlined by the Debtor's attorney but stated that the "IRS is not going to return a ballot." The Debtor's attorney proposed filing documents that would reflect the agreement with the IRS as well as a memorandum of law in support of the proposition that such documents could justify confirmation of the Amended Plan notwithstanding the lack of any formal affirmative ballots. The Debtor and the IRS were given additional time to file documents and legal authority.

The Debtor subsequently filed his written Stipulation with the IRS that provides for an increase in the distribution to unsecured creditors from 30% to 44% and for the IRS to withdraw its objection to confirmation. The Stipulation says that the IRS "affirmatively accepts" the Amended Plan as modified. The Debtor also filed a memorandum of law, an affidavit signed by the Debtor, and an amended budget showing the reduced expenses as requested by the IRS. The IRS filed no additional documents. The matter is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois

have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Confirmation of a Chapter 11 plan of reorganization is a core proceeding. 28 U.S.C. §157(b)(2)(L). The matters here arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code, and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

If any class of claims is impaired by the terms of a Chapter 11 plan, the plan may only be confirmed if "at least one class of claims that is impaired under the plan has accepted the plan" and the determination of whether a class has accepted the plan is made without considering the votes of insiders. 11 U.S.C. §1129(a)(10). Generally, a class of claims will be found to have accepted a plan if creditors who hold "at least two-thirds in amount and more than one-half in number of the allowed claims of such class" have voted affirmatively for the plan. 11 U.S.C. §1126(c). Only actual votes count; the failure to return a ballot is not deemed to be acceptance. *See In re Vita Corp.*, 358 B.R. 749, 751 (Bankr. C.D. Ill. 2007) (Perkins, J.).

When a disclosure statement has been conditionally or finally approved, the court must fix a date within which a plan may be accepted or rejected and may set a date for a hearing on plan confirmation. Fed. R. Bankr. P. 3017(c). Not less than twenty-eight days' notice is required for the filing of objections and the hearing to consider confirmation of a Chapter 11 plan. Fed. R. Bankr. P. 2002(b).

An acceptance or rejection of a plan must be in writing, signed by the creditor or its agent, and conform to Official Form 314. Fed. R. Bankr. P. 3018(c). Creditors who hold both secured and unsecured claims may accept or reject in each class. Fed. R. Bankr. P. 3018(d).

Here, the Debtor appears to have complied with the Court's orders regarding noticing the Amended Plan and seeking acceptance of it. Nevertheless, the Debtor received no votes whatsoever accepting or rejecting the Amended Plan. The Debtor's initial efforts to have the votes of Sherry Vascik and Heartland counted are troubling. Sherry Vascik and Vascik's Bookkeeping were employed as professionals in the case to provide accounting services to the Debtor. The application to employ was approved based on the verified statement of Sherry Vascik that she held no interest adverse to the Debtor and had no connection to any creditor of the Debtor. Thus her ballot asserting a pre-petition claim of $1000 either included a false representation or evidenced that her previously filed verified statement was untrue. Either way, the Debtor's attorney should have questioned the ballot and not included it on the original ballot report. Likewise, the Debtor is an owner of Heartland, making Heartland an insider whose ballot could not be counted in determining whether the unsecured class had accepted the plan. 11 U.S.C. §1129(a)(10). No justification exists for including Heartland's ballot on both the original and amended ballot reports or for the Debtor's assertion that Heartland's casting of an affirmative ballot resulted in the acceptance of the Amended Plan by an impaired class. The Debtor's attorney's acknowledgment at the commencement of the confirmation hearing that no votes that could properly

be counted had been received provided limited mitigation of the initial misstep of
attempting to have the votes of Sherry Vascik and Heartland be determinative of
the ballot results.[1]

Notwithstanding the lack of any affirmative ballots cast in support of the
Amended Plan, the Debtor argues that the Amended Plan should be confirmed.
Relying heavily on *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604 (6th Cir.
2000), the Debtor asserts that the Stipulation entered into by the IRS constitutes
an informal affirmative ballot resulting in the requirements of §1129(a)(10) having
been met. Although *Waterman* clearly holds that bankruptcy courts have
discretion to consider whether a document that is not an official ballot may
nevertheless be considered as a ballot, it provides little in the way of actual

---

[1] The ballots of Sherry Vascik and Heartland are also suspect because it does
not appear that either holds an allowed claim in the case; only creditors with
allowed claims may vote to accept or reject a Chapter 11 plan. 11 U.S.C. §1126(a).
Generally, to have a claim allowed, a creditor must timely file a claim. 11 U.S.C.
§502(a). But in Chapter 11 cases, the schedules provide prima facie evidence of
the validity and amount of claims unless such claims are identified on the
schedules as "disputed, contingent, or unliquidated." Fed. R. Bankr. P. 3003(b)(1).
Only creditors who are not scheduled or are listed as holding a disputed,
contingent, or unliquidated claim must file a claim in order to share in
distributions and be entitled to vote to accept or reject a plan. Fed. R. Bankr. P.
3003(c)(2). Sherry Vascik, individually, was not a scheduled creditor and
therefore, if she actually had a pre-petition claim against the Debtor, she was
required to file a proof of claim in order to have an allowed claim; she did not file
a proof of claim. Vascik's Bookkeeping and Heartland were scheduled for
"unknown" amounts. Although "unknown" is not synonymous with "disputed,
contingent, or unliquidated," it is obvious that the statutory evidentiary
presumption as to the validity and amount of a claim cannot apply to a claim
scheduled as "unknown." If either Vascik's Bookkeeping or Heartland actually had
a pre-petition claim against the Debtor, they were required to file proofs of claim
identifying the specific basis for the claim and the amounts due in order to have
their claims allowed. Neither filed such a proof of claim.

support to the Debtor here. *Id.* at 611-12. *Waterman* held that the bankruptcy court did not abuse its discretion in denying a creditor's request to have a series of motions considered an informal proof of claim and an objection to confirmation considered a ballot when the creditor had missed both the claims bar date and the balloting deadline. *Id.* at 610-12. Stating that "[t]he practice of bankruptcy law … is fraught with the perils and pitfalls of missed deadlines for its practitioners[,]" the *Waterman* court found no fault with the bankruptcy court's "unwillingness" to allow the creditor to "state his demands with such imprecision[.]" *Id.* at 610.

A more instructive case on the issue of considering tardily-filed ballots is *In re Ekstrom*, 2010 WL 1254893 (Bankr. D. Ariz. Mar. 23, 2010). In *Ekstrom*, both the IRS and another creditor failed to timely file ballots, resulting in no impaired class affirmatively accepting the Chapter 11 plan. *Id.* at *13. The IRS later signed a stipulation with the debtor resolving the amount of its claim and providing that the IRS accepted the plan as modified by the stipulation. *Id.* at *14. But the *Ekstrom* court refused to find that the stipulation constituted a ballot for the purpose of determining whether an impaired class had affirmatively accepted the plan; the stipulation did not incorporate all of the requirements of the Official Form and was filed without a request for an extension of the balloting deadline. *Id.* at *14-15. The court noted that, although counsel for the IRS appeared at the contested confirmation hearing and stated that the IRS supported confirmation, no request for an extension of time to ballot was requested and the stipulation did not "contain or incorporate a late filed ballot." *Id.* at *15. With respect to the other creditor, however, a late ballot was filed by the creditor along with a motion by the

debtor asking for an extension of the balloting deadline. *Id.* at *16. Because the motion contained a credible explanation of why the creditor had missed the original deadline and because a ballot on the Official Form had been filed, the *Eckstrom* court allowed the creditor's late-filed ballot to be counted. *Id.* at *17.

A deadline for Chapter 11 plan balloting may be extended after the deadline has expired if a motion is made setting forth why the initial "failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). Excusable neglect includes "inadvertence, mistake, or carelessness, as well as ... intervening circumstances beyond the party's control." *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388 (1993). The standard used in considering whether a failure to act was the result of excusable neglect is "flexible" and requires an "equitable inquiry." *Id.* at 389. Bankruptcy courts that have allowed late-filed ballots to be counted have generally done so only after finding that the failure to timely ballot was the result of excusable neglect. *See, e.g.*, *In re Rhead*, 179 B.R. 169, 177 (Bankr. D. Ariz. 1995) (failure to file ballot by July 5th deadline was the result of excusable neglect due to July 4th holiday); *In re Paul*, 101 B.R. 228, 231 (Bankr. S.D. Cal. 1989) (mailing ballot to wrong address was excusable neglect).

Here, the Debtor asserts that, because the Stipulation entered into with the IRS contains substantially all of the information required by Official Form 314, the Stipulation should be counted as an affirmative ballot and the Amended Plan should be confirmed. The Debtor fails, however, to address the fact that the Stipulation was filed after the balloting deadline and without any request having

been made for an extension of that deadline. More importantly, the Debtor's argument ignores the fact that the IRS's failure to timely cast its ballot was the product of an intentional decision by the IRS not to vote rather than the result of excusable neglect.

The IRS was represented at the confirmation hearing by an Assistant U.S. Attorney who stated unequivocally that the IRS's policy is not to vote to accept or reject Chapter 11 plans and that the IRS was not going to return a ballot in this case. The IRS manual confirms that generally the IRS "does not vote" when it is the holder of an administrative, gap period, or priority claim in a Chapter 11 case but reserves the "opportunity" to vote when it holds secured or unsecured claims. Internal Revenue Manual §5.17.10.9.3, https://www.irs.gov/irm/part5/irm_05-017-010.html (last visited Aug. 22, 2016). The Court finds the IRS's position on balloting as stated in open court and set forth in its manual to be controlling on the issue of whether the Stipulation is an affirmative ballot that would support confirmation. Clearly, it is not.

For whatever reasons, the IRS has established a policy of never—or at least rarely—voting on confirmation of Chapter 11 plans. In following that policy, the IRS, in large measure, places its fortunes in the hands of other creditors who may or may not vote and thereby determine whether a plan is confirmed or can even get to a confirmation hearing. The Court must assume that the IRS believes that overall its policy serves its interests and it is not the Court's role to criticize the IRS's published strategies for participating in Chapter 11 cases. But it also is not the Court's role to save the IRS from the results of implementing its own

-13-

strategies.

The result of the IRS's failure to timely ballot in this case—denial of confirmation of the Amended Plan—is of its own making. Had the IRS timely voted to reject the Amended Plan, it would have preserved its right to change that vote and accept the Amended Plan when it reached the agreement with the Debtor memorialized in the Stipulation. Fed. R. Bankr. P. 3018(a). And the opportunity to change that result even after the balloting deadline had passed was offered to the IRS but unequivocally rejected by the IRS at the confirmation hearing. The Court must assume that, although the IRS is now willing to accept the Amended Plan, it also has no strong objection to confirmation of the Amended Plan being denied.

In saying that it is not the Court's role to the save the IRS from its own strategies, the Court notes that it is not the IRS but rather the Debtor who is asking to be saved and seeking to have the Stipulation counted as a ballot. But the Debtor's bargained-for use of the term "affirmatively accepts" in the Stipulation is simply not enough to overcome the IRS's unequivocal statements that it intentionally did not vote and absolutely will not vote to accept the Amended Plan. In view of those statements, this Court will not use whatever discretion it has to construe the Stipulation as a ballot and, accordingly, the Stipulation, filed long after the balloting deadline had passed, will not be counted as an affirmative ballot. Because no valid ballots have been submitted accepting the Amended Plan, a threshold requirement for confirmation has not been met. Confirmation of the Amended Plan will be denied.

## IV. Conclusion

The Debtor has failed to obtain the affirmative acceptance of the Amended Plan by at least one class of impaired creditors and therefore the Amended Plan cannot be confirmed. The Stipulation entered into with the IRS is not a ballot that can be counted to change that result. Regardless of how flexible the standard for excusable neglect is or how equitable it might be to extend the balloting deadline, the IRS's unequivocal position that it intentionally did not vote and will not vote if given another chance to do so controls the decision here.

Because the Debtor has filed two plans and not obtained a single vote accepting either plan, there is no reason to grant leave to file another plan and such leave will be denied. All parties will be given a short time to consider whether the case should be dismissed or converted. 11 U.S.C. §1112(b)(4)(J).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ###